```
 1                  UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
 2                       DEL RIO DIVISION

 3


 4
      UNITED STATES OF AMERICA     )
 5                                 )
                                   )    DR-10-CR-361(02) AM
 6    VS.                          )
                                   )    DEL RIO, TEXAS
 7                                 )    JANUARY 31, 2012
      LUIS ROEL CASTANEDA          )
 8

 9

10

11

12    _____

13                         MOTION HEARING

14            BEFORE THE HONORABLE ALIA MOSES
                   UNITED STATES DISTRICT JUDGE
15

16    _____

17

18

19

20

21

22

23

24    Proceedings reported by stenotype, transcript produced by

25    computer-aided transcription.
```

**A P P E A R A N C E S**

FOR THE UNITED STATES OF AMERICA:
          UNITED STATES ATTORNEY'S OFFICE
          MICHAEL GALDO
          Assistant U.S. Attorney
          Third Floor, U.S. Courthouse
          111 East Broadway
          Suite 300
          Del Rio, Texas   78840


FOR THE DEFENDANT:
          RALPH R. MARTINEZ
          MARTINEZ & MARTINEZ
          2900 Woodridge
          Suite 306
          Houston, Texas   77087


FEDERAL INTERPRETER:
          ENRIQUE NORIEGA
          United States District Court
          Western District of Texas
          111 E. Broadway
          Del Rio, Texas   78849


OFFICIAL COURT REPORTER:
          ANNA RENKEN LAFRENZ, CSR, RPR
          United States District Court
          Western District of Texas
          111 E. Broadway
          Suite 214
          Del Rio, Texas   78840

1                              **I N D E X**

2                                                            **PAGE**

3
      **WITNESSES**
4     **AURELIO CORTINAS**
      Direct Examination by Mr. Martinez              9
5     Cross Examination by Mr. Galdo                  11
      Redirect Examination by Mr. Martinez            12
6     Recross Examination by Mr. Galdo                15

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | **(JANUARY 31, 2012, OPEN COURT.)**                          |
|       | 2  | THE COURT:  DR-10-CR-361; United States of America           |
|       | 3  | vs. Defendant Number 2, Luis Roel Castaneda.                 |
|       | 4  | MR. GALDO:  Good morning, Your Honor.  Michael Galdo         |
| 09:38 | 5  | on behalf of the United States.                              |
|       | 6  | MR. MARTINEZ:  Good morning.  Ralph Martinez on              |
|       | 7  | behalf of Mr. Castaneda.  Mr. Castaneda is present.          |
|       | 8  | THE COURT:  You may go to counsel table since this is        |
|       | 9  | your motion for new trial.                                   |
| 09:38 | 10 | THE DEFENDANT:  Yes, Your Honor.                             |
|       | 11 | THE COURT:  You may begin with your opening                  |
|       | 12 | statement.                                                   |
|       | 13 | MR. GALDO:  Your Honor, if I may, can I raise one            |
|       | 14 | brief point before we begin with openings?                   |
| 09:38 | 15 | THE COURT:  Uh-huh (yes).                                    |
|       | 16 | MR. GALDO:  I just want to confirm through the court         |
|       | 17 | that the basis for a new trial is new evidence only and that's|
|       | 18 | what we are here to argue today.                             |
|       | 19 | THE COURT:  Mr. Martinez, is that where we are?             |
| 09:38 | 20 | MR. MARTINEZ:  Yes, Your Honor.                              |
|       | 21 | THE COURT:  Okay.  Based on new evidence.  All right.        |
|       | 22 | Or newly discovered evidence, I guess is what we are talking |
|       | 23 | about.  Okay.  Opening statement?                            |
|       | 24 | MR. MARTINEZ:  Your Honor, may it please the Court.          |
| 09:38 | 25 | We had a trial in this case, and in that trial two witnesses |

1    testified and those two witnesses in that trial did not

2    identify my client.

3            THE COURT:  You're going to have to speak a little

4    louder.  I'm having a trouble hearing you today.

09:39  5            MR. MARTINEZ:  I'm sorry.

6            THE COURT:  No.  That's fine.  I don't know if it is

7    the sound system or what.  Are you-all having trouble too?

8            MR. GALDO:  I'm having trouble hearing.  But also I

9    would just invoke the Rule on the witnesses.  I think that

09:39 10    maybe the defense witness may be listening.

11            THE COURT:  Okay.  Marshals, let's move him out.  It

12    is the system.  Go ahead.

13            MR. MARTINEZ:  Okay, Your Honor.  Excuse me.  And

14    there were two witnesses that testified against my client,

09:40 15    neither of which identified him.  The Court denied my motion

16    for a judgment of acquittal; and the Court emphasized that he

17    had, my client -- the witnesses were interviewed nine months

18    before and in an interview did identify my client at an earlier

19    date, though not under oath and not in the courtroom.

09:40 20        Those, that, Cortinas, one of the witnesses who did not

21    identify my client at trial and who did identify my client at

22    the pretrial session with the agents, was identifying my client

23    from a license and a picture from a license that he had in

24    1997.  So he wasn't identifying my client today or at the time

09:40 25    of the trial.  He identified him at that debriefing session

1    from a 1997 license.  At least that's what the testimony at the

2    trial showed.

3         So that given, the new evidence would be that subsequent

4    to the trial I received a call from the government and a letter

09:41  5    indicating that Cortinas had indicated to the agents that, as a

6    matter of fact, he knew that my client was not involved in the

7    conspiracy; that in fact the testimony he related at the

8    pretrial hearing and the actions he attributed to that person

9    was not my client, but rather my client's brother, and

09:41 10    therefore he had been either mistaken or he lied to the agents

11    at the session; but that now he was providing at the time after

12    the trial he was now providing evidence that affirmatively

13    established that my client, at least according to his

14    testimony, was not involved in the conspiracy.  So at the trial

09:42 15    he can't identify him.

16         The new evidence would be the evidence that he gave in a

17    subsequent-to-the-trial debriefing session where he said it was

18    my client's brother.  Not my client.  So when the Court denied

19    the motion for judgment of acquittal the Court was relying on a

09:42 20    briefing session, a briefing session that occurred nine months

21    before the trial and presumed that my client as he stated and

22    in fact he did identify my client.

23         Well, now that's taken -- that's questionable, that

24    debriefing session, because the new evidence would contradict

09:42 25    the identification he made at the pretrial conference; and

1    that's what the Court relied on, in my opinion and I think the

2    Court stated it, in denying my motion for judgment of

3    acquittal.  So that's no longer as significant as it was when

4    the motion was denied, because the Court was not aware of what

09:43  5    is any of the facts subsequent to the trial.

6        So the new evidence would in fact create affirmative

7    testimony, basically a new witness, a witness for the defense

8    that would establish "I know who was involved.  I know who did

9    what and it was not Mr. Castaneda.  It was his brother."

09:43 10       And I was not made aware of that.  And it wasn't

11    intentional.  I was not made aware of that, because the

12    government didn't know about it until after the trial.  And I

13    had no way of reaching or of even thinking that he was going to

14    change his testimony like that.

09:43 15       And at trial all he stated was he didn't identify him.  He

16    never mentioned anything about my client.  And that would be

17    the new evidence, and I respectfully suggest that it is

18    material and it wasn't known beforehand.  Thank you.

19           THE COURT:  Okay.  Mr. Galdo.

09:44 20           MR. GALDO:  May it please the Court.  Your Honor,

21    first, just so we're all on the same page here about what

22    exactly we're talking about, after the trial Mr. Cortinas, who

23    was a witness for the government, told the government nothing

24    about his previous identifications.  What he did call into

09:44 25    question is his out-of-court identification.  All he said was

that the man in the courtroom was in fact this Pajaro person's

brother, Cosco.  That's what he is saying.  He is saying, he

said that the defendant has three brothers, that Pajaro has

three brothers.  Not two.  They are Jose, Eddie and this person

named Cosco.

In an earlier debrief he had mentioned a person named

Cosco and said Cosco was actually also involved in the

conspiracy.  So I want to clarify that, that he is not saying

now, Cortinas is not saying now that this person is an innocent

third-party brother.  He's saying he is also someone involved

in the conspiracy, but not Pajaro.  But really that's beside

the point, in the government's view.

First of all because the first issue here is whether or

not this quote, unquote "new evidence" is actually credible,

whether there's anything there, whether you can actually find

that Mr. Cortinas, his statements are true.  The government is

not and we ask Your Honor to find his statements about this

mysterious third brother Cosco to not be credible.

Secondly, eve if Your Honor were to find the evidence

credible and worthy of consideration, the government doesn't

believe it is new evidence.  The witness testified at trial

that Pajaro was not in the courtroom.  That was his statement

from the stand.  He told the jury that Pajaro was not here.

Just he said in our debrief that wasn't Pajaro in the

courtroom.  That is the same.  There is no difference between

1    those two statements.  He is still did not identify him.

2        And, Your Honor, even if Your Honor were to decide that

3    you want to characterize that this post trial disclosure by

4    Mr. Cortinas is new evidence, it does not meet the standard to

09:46 5    result in a new trial.  And I'll probably quote this several

6    times; but Your Honor I am sure is familiar with the Berry rule

7    for *U.S. v. Wahl,* the five points.  But it was summarized in

8    the Scroggins opinion by the Fifth Circuit that basically said.

9    "The District Court should grant a new trial only if it

09:46 10   concludes that the new evidence probably would have acquitted

11   the defendant."

12       And that's a very high burden, and this new evidence does

13   not meet that standard.  In this particular case the defense

14   was given the opportunity to argue and they did argue over and

09:46 15   over again in closing that there was no identification in court

16   of this man.  That point was made crystal clear to the jury.

17   It was repeated over and over again.  All of that evidence went

18   to the jury and they returned the verdict, and we would ask

19   that Your Honor not grant the motion for new trial.

09:47 20           THE COURT:  Your witness, Mr. Martinez.

21           MR. MARTINEZ:  I'm sorry, Your Honor?

22           THE COURT:  Your witness.  Call your witness.

23           MR. MARTINEZ:  Your Honor, at this time I would ask

24   the Court, I will ask for Mr. Cortinas.

09:47 25           THE COURT:  Okay.  Marshals, go ahead and bring in

1    the witness.

2              (OATH ADMINISTERED.)

3              THE WITNESS:  I do.

4              THE COURT:  You may proceed, Mr. Martinez, from the

09:48  5    podium.

6              MR. MARTINEZ:  Thank you, Your Honor.

7                         DIRECT EXAMINATION

8    Q.   (BY MR. MARTINEZ)  Would you please state your name.

9    A.   Aurelio Cortinas.

09:49 10    Q.   Mr. Cortinas, you're an inmate at the Val Verde Detention

11    Center; is that correct?

12    A.   No.

13    Q.   Where are you residing at this point?

14    A.   San Antonio.

09:49 15    Q.   Do you recall testifying in the trial involving Luis Roel

16    Castaneda?

17    A.   Yes.

18    Q.   And in that trial you were asked to identify my client as

19    Pajaro?

09:49 20    A.   Yes.

21    Q.   And you said you couldn't identify him, my client as

22    Pajaro?

23    A.   Yes.

24    Q.   Is that your testimony today?

09:50 25    A.   Yes.

1    Q.    Do you recall if my client was involved in any way in any

2    wrongdoing?

3    A.    Yes.

4    Q.    But he wasn't Pajaro?

09:50 5    A.    He's Pajaro's brother.

6    Q.    Do you recall debriefing to agents after the trial?

7    A.    No.

8    Q.    Did you ever tell the agents before the trial that my

9    client was Pajaro?

09:50 10    A.    No.

11    Q.    So you never told the agents my client was Pajaro?

12    A.    Not to him.

13    Q.    How about after the trial?  Did you talk to the agents

14    about my client being Pajaro?

09:51 15    A.    No.

16    Q.    Okay.  But you know my client wasn't Pajaro?

17    A.    He's Cosco.  He's not Pajaro.

18    Q.    Okay.  So whatever -- was it whatever crimes that were

19    attributed to Pajaro, your testimony would be that it was

09:52 20    really my client's brother?

21    A.    They were both there.

22    Q.    But at the trial did the government ever ask you if you

23    could identify my client period?

24    A.    Yes.

09:52 25    Q.    And you said you couldn't identify him?

1    A.    Not as Pajaro.

2          MR. MARTINEZ:  I have nothing else, Your Honor.

3          THE COURT:  Okay.  Mr. Galdo.

4          MR. GALDO:  Actually very briefly, Your Honor.

09:53  5                    CROSS EXAMINATION

6    Q.    (BY MR. GALDO)  Good morning, sir.

7    A.    Good morning.

8    Q.    Just a couple of quick "yes" or "no" questions.  When you

9    met with agents when this case was beginning they showed you

09:53 10   some photo lineups; right?

11   A.    Yes.

12   Q.    And when they showed you those photo lineups they didn't

13   tell you which photo to pick, did they?

14   A.    No.

09:53 15   Q.    And no one pointed at a picture and told you to pick that

16   person, did they?

17   A.    No.

18   Q.    And your wife has been threatened as a result of this

19   case, hasn't she?

09:54 20   A.    Yes.

21         MR. GALDO:  The Court's brief indulgence.

22         THE COURT:  Mr. Martinez.

23         MR. GALDO:  One second, Your Honor, if I can consult?

24         THE COURT:  Uh-huh (yes).

09:54 25         (Mr. Galdo confers with Mr. Blanton.)

Q.    (BY MR. GALDO)   One other clarification question:   The person you identified in those photos as Pajaro, that person was involved in the drug conspiracy, wasn't he?

A.    Yes.

09:54          MR. GALDO:   I don't have anything further, Your Honor.

          THE COURT:   Mr. Martinez.

                    REDIRECT EXAMINATION

Q.    (BY MR. MARTINEZ)   Mr. Cortinas, during the trial you 09:55 never testified my client was involved in the drug conspiracy; is that correct?

A.    They kept bringing up the name Pajaro.   And to me he's not Pajaro.

Q.    So when you debriefed with the agents and pointed him out 09:55 as Pajaro you made a mistake?

A.    No, sir.

Q.    But you did point him out as Pajaro at that time, didn't you?

A.    Maybe.

09:55 Q.    And you know now he's not Pajaro?

A.    I'm looking at him in person right now.

Q.    And it is not Pajaro?

A.    He is Cosco and he was with us too.

Q.    But that's not what I'm asking.

09:56 A.    He's not Pajaro.

```
 1    Q.   Okay.  And that is different testimony than what you gave

 2    to them pretrial.

 3               THE COURT:  Counsel, but that is irrelevant.  What is

 4    relevant is what testimony he gave at trial.  You are saying

 5    this is newly discovered evidence from trial.  Not the

 6    pretrial.

 7               MR. MARTINEZ:  Okay.  The reason I'm raising it,

 8    Judge, is because, and again maybe I'm wrong here; but when the

 9    motion for judgment of acquittal was denied I believe and I

10    think --

11               THE COURT:  But your point here is not whether I

12    wrongfully denied your motion for judgment of acquittal.

13    That's not what we are doing here.

14               MR. MARTINEZ:  Okay.

15               THE COURT:  What we're doing here is whether or not

16    you should get a new trial based on new evidence, so the point

17    is not what I relied on.  The point is whether you are entitled

18    to a new trial.  Because if I were to agree with you, you still

19    don't get a judgment of acquittal.  You would just get a new

20    trial.

21               MR. MARTINEZ:  Okay.  Okay.

22               THE COURT:  That's a little bit of a difference

23    there.

24               MR. MARTINEZ:  Right.

25    Q.   (BY MR. MARTINEZ)  At the trial you never said my client
```

|     |      |                                                           |
|-----|------|-----------------------------------------------------------|
|     | 1    | was Pajaro?                                               |
|     | 2    | A.    No.                                                 |
|     | 3    | Q.    After the trial -- at the trial you never identified my |
|     | 4    | client as Pajaro?                                         |
| 09:57 | 5  | A.    No.                                                 |
|     | 6    | Q.    But after the trial you told agents that my client was not |
|     | 7    | Pajaro?                                                   |
|     | 8    | A.    No.                                                 |
|     | 9    |              THE COURT:   Louder, please.                 |
| 09:58 | 10 | A.    No.                                                 |
|     | 11   | Q.    (BY MR. MARTINEZ)  You never told the agents after the |
|     | 12   | trial that my client was not Pajaro?                      |
|     | 13   | A.    Oh, yes, I told them he was not Pajaro.             |
|     | 14   | Q.    Did you tell the agents that before the trial?      |
| 09:58 | 15 | A.    No.  After the trial.                               |
|     | 16   | Q.    So is that -- would that be because you remembered  |
|     | 17   | something after the trial?                                |
|     | 18   | A.    No.                                                 |
|     | 19   | Q.    How come you didn't tell the agents before the trial or at |
| 09:58 | 20 | the trial that he wasn't Pajaro?                          |
|     | 21   | A.    Because I did not see the agents.  They did not talk to |
|     | 22   | me.                                                       |
|     | 23   | Q.    But you were shown photographs?                     |
|     | 24   | A.    I realized it once I saw him in here.               |
| 09:59 | 25 | Q.    You mean today?                                     |

| | | |
|---|---|---|
| | 1 | A.    No.   During the trial. |
| | 2 | Q.    But you never told the U.S. Attorney or the agents that it |
| | 3 | was not Pajaro at the trial? |
| | 4 | A.    I don't remember. |
| 09:59 | 5 | MR. MARTINEZ:  Nothing further, Your Honor. |
| | 6 | THE COURT:  Mr. Galdo. |
| | 7 | MR. GALDO:  Just one question, Your Honor. |
| | 8 | RECROSS EXAMINATION |
| | 9 | Q.    (BY MR. GALDO)  Mr. Cortinas, you in fact told the jury |
| 09:59 | 10 | that that wasn't Pajaro, didn't you? |
| | 11 | A.    Yes. |
| | 12 | MR. GALDO:  Nothing further, Your Honor. |
| | 13 | THE COURT:  Mr. Martinez. |
| | 14 | MR. MARTINEZ:  I have nothing else, Your Honor. |
| 10:00 | 15 | THE COURT:  You may step down.  Your next witness, |
| | 16 | Mr. Martinez. |
| | 17 | MR. MARTINEZ:  Your Honor, I think the government and |
| | 18 | I may have a stipulation to admit to the Court. |
| | 19 | MR. GALDO:  I don't know if defense counsel |
| 10:00 | 20 | wants to.  It is the report and the exhibits that were filed |
| | 21 | with the government's response.  I'm not sure.  I think the |
| | 22 | defense may want that as part of the -- |
| | 23 | MR. MARTINEZ:  The record. |
| | 24 | MR. GALDO:  -- record, which I assume it already is |
| 10:00 | 25 | if it was filed. |

|  |  |
|---|---|
| 1 | THE COURT:  If you attached it to your response, it |
| 2 | is. |
| 3 | MR. GALDO:  Yes, Your Honor. |
| 4 | MR. MARTINEZ:  Then I'm just asking the Court, |
| 10:00  5 | respectfully ask the Court to take judicial notice of that, |
| 6 | Judge. |
| 7 | THE COURT:  I can't take judicial notice of it, Mr. |
| 8 | Martinez.  If you-all want to stipulate that it is substantive |
| 9 | evidence, that's fine, and I can consider it; but I can't take |
| 10:00  10 | judicial notice of it. |
| 11 | MR. GALDO:  I think we would both stipulate -- |
| 12 | MR. MARTINEZ:  That's correct. |
| 13 | THE COURT:  Okay. |
| 14 | MR. GALDO:  -- that the exhibit the government filed |
| 10:00  15 | is substantive evidence. |
| 16 | THE COURT:  That's fine. |
| 17 | MR. MARTINEZ:  That's correct. |
| 18 | THE COURT:  That's fine. |
| 19 | MR. MARTINEZ:  And we rest, Your Honor. |
| 10:00  20 | THE COURT:  Okay.  Mr. Galdo, any witnesses? |
| 21 | MR. GALDO:  No witnesses, Your Honor.  The government |
| 22 | is going to rely on the exhibits that we filed.  And one |
| 23 | additional fact:  The Presentence Report for this defendant |
| 24 | that was created by Probation, that was referenced in the |
| 10:01  25 | government's filing. |

<table>
<tr><td>1</td><td>THE COURT:  I hope not, because it is a sealed</td></tr>
</table>

```
 1              THE COURT:  I hope not, because it is a sealed
 2      document, Mr. Galdo.
 3              MR. GALDO:  I believe Mr. Gyires did.  But it is a
 4      family.  It deals with the brothers, Your Honor.  The relevancy
10:01  5      is basically that the defendant told Probation that he only had
 6      two brothers, which is contrary to, if you read the DEA report,
 7      of the conversation with Mr. Cortinas which is now in evidence.
 8      He said that there are three brothers of Mr. Castaneda here,
 9      Jose, Eddie and this Cosco person that he's discussing.  And
10:01 10      Mr. Castaneda, himself said he simply had two brothers, Jose
11      and Eddie, and that's on page 33, paragraph 96 of the
12      Presentence Report.
13              THE COURT:  Okay.  Mr. Martinez doesn't have any
14      witnesses.  You don't have any further witnesses.  The evidence
10:02 15      is closed.  Arguments, Mr. Martinez.
16              MR. MARTINEZ:  Yes, Your Honor.  Your Honor, as I
17      stated, the new evidence consists of one or two things:  One
18      would be that my client is not Pajaro, according to this
19      witness.  That is something that we didn't know.
10:02 20              THE COURT:  But you did know, Mr. Martinez.  That
21      came out at the trial.
22              MR. MARTINEZ:  No.  The only thing he --
23              THE COURT:  Didn't the witness say that this wasn't
24      Pajaro at the trial?
10:02 25              MR. MARTINEZ:  I believe he said he didn't recognize
```

1    my client.  Maybe I'm wrong; but I think --

2           THE COURT:  I thought he just testified right now

3    that he did say in trial that this wasn't Pajaro.

4           MR. MARTINEZ:  My recollection, and I could be

10:02  5    corrected.  I'm not saying --

6           THE COURT:  I don't remember specifically.  I'm just

7    going by what he just said.

8           MR. MARTINEZ:  My recollection is he couldn't

9    identify my client period and didn't reference Pajaro.  He just

10:03  10   said couldn't identify him.

11          THE COURT:  He said he didn't see Pajaro in the

12   courtroom.

13          MR. MARTINEZ:  That may be it.  I don't remember,

14   Judge.

10:03  15          THE COURT:  So if he said he didn't see Pajaro in the

16   courtroom, that happened in trial.  That is not newly

17   discovered.

18          MR. MARTINEZ:  Okay.  I see your point.  What I'm

19   saying is that, and like I said, I don't remember; but I

10:03  20   believe the trial testimony was that he didn't recognize my

21   client; but if it is the way you recall, you are obviously

22   making a pretty good point.

23          THE COURT:  No.  I'm just saying isn't that what he

24   just testified.

10:03  25          MR. MARTINEZ: He just testified to that.

```
 1              THE COURT:  Okay.

 2              MR. MARTINEZ:  But I think it would be contrary to

 3    what happened in the trial.

 4              THE COURT:  I don't think so.  I think that is what

 5    happened at the trial.  But go ahead, Mr. Martinez.

 6              MR. MARTINEZ:  You know, I mean --

 7              THE COURT:  Go ahead.  Go ahead.

 8              MR. MARTINEZ:  -- I'm not sure.  The second thing,

 9    that even if in fact the testimony today, I mean, the testimony

10    that he gave is not new evidence that pertains to the

11    substantive evidence, it contradicts what he told in pretrial.

12    It would have -- well, let me withdraw it, Your Honor, because

13    I'm just going to withdraw that.

14         I'm going to go ahead and just offer the fact that he is

15    now saying affirmatively that he wasn't Pajaro; and at trial

16    his testimony was he couldn't identify him as Pajaro, if

17    assuming that's what he said.  There's a distinction to me.

18    Saying "I don't recognize him as Pajaro" could very well mean

19    that "He is Pajaro.  I just don't remember."

20              THE COURT:  Okay.  If the trial testimony was "I

21    don't see Pajaro in the courtroom," is there an inconsistency?

22              MR. MARTINEZ:  Yes.

23              THE COURT:  Even if he said "I don't see Pajaro in

24    the courtroom?"

25              MR. MARTINEZ:  Yes.
```

10:03  5
10:03 10
10:04 15
10:04 20
10:04 25

1          THE COURT:  Why?

2          MR. MARTINEZ:  Because "I don't see Pajaro in the

3    courtroom" could very well be because "I don't remember."

4          THE COURT:  No.  Now you are speculating as to why he

10:04  5    said that.  I'm not looking at why he said that.  I'm looking

6    at what he said compared to what you are now wanting me to

7    find.  If he said "I don't see Pajaro in the courtroom," then

8    he didn't identify your client as Pajaro period in the

9    courtroom for the jury.

10:05  10         MR. MARTINEZ:  That's true.

11         THE COURT:  So now you are saying there's newly

12   discovered evidence that he is not identifying my client as

13   Pajaro.  It is not new.  He did that in front of the jury.

14         MR. MARTINEZ:  Well, he is saying now -- I agree with

10:05  15   that to some extent.

16         THE COURT:  Okay.

17         MR. MARTINEZ:  But he is saying now "I know for sure

18   it wasn't Pajaro.  It was Pajaro's brother."  And to me that's

19   a greater step toward my client not being involved in what the

10:05  20   allegations of the conspiracy state.  The conspiracy states he

21   is, my client is Pajaro.  Now he may be someone that is

22   involved in a conspiracy at some point perhaps; but the

23   indictment talks about my client being Pajaro.  So when he

24   affirmatively says "It was his brother, not him," I think

10:05  25   that's a greater significance than saying "I don't identify

1    him."

2              THE COURT:  Okay.  And I understand what you are

3    saying; but his testimony was also "Both brothers were involved

4    in there with me."

10:06  5              MR. MARTINEZ:  Today, yes, ma'am.

6              THE COURT:  Okay.  So the bottom line is, is it to

7    the point where it would substantially or probably change the

8    outcome of the trial if the testimony would have been "I don't

9    see Pajaro in the courtroom; but this man was there with me

10:06  10    when we did all of this"?

11              MR. MARTINEZ:  Well, as a practical matter, knowing

12    jurors and knowing the way in my opinion they came up with a

13    pretty fast verdict, they probably wouldn't have.  I don't

14    know.  I'm not going to say they wouldn't.

10:06  15              THE COURT:  Okay.

16              MR. MARTINEZ:  I mean, they would have.

17              THE COURT:  Okay.

18              MR. MARTINEZ:  I can't say that, and I've been

19    practicing for 30 years in these drug cases.

10:06  20         But I will say this though:  It would have been a

21    technical point, but a legal point.  Perhaps the jury would

22    have ignored the variance from what the conspiracy indictment

23    stated; but legally as a matter of law maybe on paper or maybe

24    on a motion for judgment of acquittal, who knows?  The jury

10:07  25    might have picked up on it.

1          The indictment alleged my client is attributed to specific

2     acts and those specific acts related to what Pajaro did and did

3     not do, what he did.  Okay.  So the evidence does touch upon

4     the charges.

10:07  5          So if I'm charged with a drug conspiracy here in Del Rio,

6     but they show that I'm a drug dealer in Houston during the same

7     time, and I'm not saying that the variance would be that great

8     in this example; but, you know, I wouldn't be found guilty.  I

9     may be a drug dealer; but, you know, I'm not a drug dealer as

10:07 10     specified in the indictment.  And that would be my point.

11               THE COURT:  Okay.  But isn't the issue here is, was

12     this man a member of the conspiracy?  Regardless of his name,

13     was this man a member of the conspiracy?  Isn't that really

14     kind of the issue here?  And did the witness say at trial?  And

10:07 15     I don't remember this, Mr. Martinez.  Did the witness say at

16     trial "I don't see Pajaro; but this man was involved with me"?

17               MR. MARTINEZ:  He didn't say that.  He didn't say he

18     wasn't involved.  He didn't say he was involved.

19               THE COURT:  Today he said he was involved; but I

10:08 20     don't remember how that relates to the trial, because I don't

21     remember that.

22               MR. MARTINEZ:  No.  He didn't say he was involved in

23     the conspiracy.  He didn't say he wasn't involved in the

24     conspiracy.

10:08 25               THE COURT:  At the trial?

```
 1            MR. MARTINEZ:  At the trial.

 2            THE COURT:  Okay.

 3            MR. MARTINEZ:  I will concede today he said that.  I

 4   will also concede I don't know what --

 5            THE COURT:  Okay.  So if the trial testimony was "I

 6   don't see Pajaro in the courtroom today" and he didn't say

 7   "This man was part of the conspiracy," wasn't all of

 8   the -- weren't all of those issues in front of the jury before

 9   they reached their verdict, that this man may not have been

10   part of a conspiracy at all and the man named in the indictment

11   was Pajaro and he didn't see Pajaro in the courtroom?  Wasn't

12   that before the jury?

13            MR. MARTINEZ:  There were some aspects to it before

14   the jury.  I'm not going to say there wasn't.

15            THE COURT:  Okay.  So the question is, is it really

16   newly discovered, or do you want another shot to argue the

17   inconsistencies before the jury?

18            MR. MARTINEZ:  That's where it may be relevant.  Not

19   only that as well as the fact that it refutes certain specific

20   allegations made in the indictment.

21            THE COURT:  No.  The indictment just says Pajaro is

22   the one that committed the conspiracy.  Right?

23            MR. MARTINEZ:  Right.

24            THE COURT:  Okay.  The witness said "I don't see

25   Pajaro in the courtroom."
```

1        MR. MARTINEZ:  Right.

2        THE COURT:  So he didn't identify your client as

3    Pajaro, the person named in the indictment.  That was before

4    the jury.

10:09  5        MR. MARTINEZ:  That was before the jury.

6        THE COURT:  So that's not newly discovered evidence.

7    That was before the jury.  The jury got a chance to consider

8    that in their deliberations.

9        Okay.  If all you're trying to do now is say I want to

10:09 10   have another jury so the jury can hear him say "That's not

11   Pajaro.  That's Cosco," that just goes to the credibility of

12   that one particular witness.

13       Do you really want to hurt his credibility when he said at

14   the trial "I don't see Pajaro in the courtroom" and didn't even

10:10 15   say that this person was involved in the conspiracy?  Do you

16   really want another stab at that?

17       MR. MARTINEZ:  Your Honor, I would say that that

18   testimony may not necessarily help him.  I'm not going to deny

19   that.

10:10 20       THE COURT:  Okay.  But you want a new --

21       MR. MARTINEZ:  And I may have to reconsider that.

22       THE COURT:  I was going to say but you want a new

23   trial.  If I were to say "Okay.  Mr. Martinez, I'm going give

24   you a new trial," this man is going to come up and say,

10:10 25   "All right.  That's not Pajaro.  That's Cosco; but he was part

1    of the conspiracy too."  Do you really want that?  I mean it is

2    really going to advance the ball for you?  Because really at

3    the trial that man's testimony really didn't hurt your client.

4    He didn't put your client in the conspiracy.

10:10   5         MR. MARTINEZ:  But, Your Honor, here is the bottom

6    line.  My client got a life sentence.  My client --

7              THE COURT:  Why?  I haven't given him a life sentence

8    yet.

9              MR. MARTINEZ:  Well, I mean, the sentence hasn't been

10:10   10   imposed.  I thought that you did.

11             THE COURT:  I may have sentenced him; but I don't

12   remember giving him life.

13             MR. MARTINEZ:  Yes.  You gave him a sentence and you

14   said "I'm going to hold up on the motion for new trial."

10:11   15         THE COURT:  Right.  But I didn't give him life, did

16   I?

17             MR. MARTINEZ:  You did.

18             THE COURT:  Yes, life.  Okay.

19             MR. MARTINEZ:  He has priors plus he has a statutory

10:11   20   mandatory application; but you left this issue open.

21             THE COURT:  But I'm just saying does it advance the

22   ball for your client?  Other than getting a new trial and

23   getting a new shot in front of a jury, does it really advance

24   the ball if this witness comes back and says "You're right.

10:11   25   This is not Pajaro.  That's Cosco; but he was part of the

1    conspiracy as well"?

2         MR. MARTINEZ:  Okay.  As a litigator for my client, I

3    would take almost anything to avoid a life sentence, and I

4    think the question predicates that.

10:11  5         THE COURT:  So the point here is it doesn't matter

6    whether he deserves a new trial or not.  The point here is we

7    want another shot at the jury so we can mitigate the sentence,

8    whether we have a right to it or not.

9         MR. MARTINEZ:  Well, it could also be that if they

10:11  10   get a new trial, that witness may not be a witness the

11   government would choose to use because of the inconsistencies.

12   I don't know.

13        THE COURT:  I don't know.  Based on what he said

14   today, that your client was part of the conspiracy, I would

10:12  15   tend to think that they would call him back.  But the issue

16   here is, is it newly discovered evidence or not?  The lack of

17   identification of your client in court was before the jury.

18        MR. MARTINEZ:  That's true.

19        THE COURT:  So it was not new evidence, so it can't

10:12  20   be a basis for a motion for new trial based on new evidence.

21        MR. MARTINEZ:  I guess the only thing that I can

22   advance, Your Honor, is that what is before the Court would be

23   something that would refute specific allegations made in the

24   indictment that suggest my client is Pajaro.  That was what the

10:12  25   indictment said.

1           THE COURT:  Okay.  But the indictment is not

2      evidence.

3           MR. MARTINEZ:  Right.  Right.  But that's part of the

4      burden.

10:12   5           THE COURT:  Okay.  But so newly discovered evidence

6      to refute the allegations in the indictment isn't an

7      appropriate consideration for the Court, because the indictment

8      is not evidence.

9           MR. MARTINEZ:  But it might have created a variance

10:13  10      perhaps that --

11           THE COURT:  Counsel, you are talking state variance.

12      That's not the same standard in federal court.  In federal

13      court you can have a speaking indictment and the government

14      doesn't need to prove half of the things in the indictment.

10:13  15      Unlike state court.  Which I remember practicing in state

16      court.  If it was in the indictment, by golly, you better prove

17      it, because if you don't, that is a variance and that's an

18      acquittal.  It is not the same in federal court.

19           MR. MARTINEZ:  Well, then the only thing left would

10:13  20      be maybe the credibility issue.  I understand you don't agree

21      with me in terms of being substantive new evidence.  Maybe it

22      is credibility on Mr. Cortinas' part.  But I agree.  He didn't

23      identify my client as Pajaro.

24           THE COURT:  Okay.  And so I don't disagree with you

10:13  25      in terms of saying I would have another shot at hitting the

credibility of Mr. Cortinas.  I understand that; but that's not the standard for a motion for new trial, that I want another shot to cross examine witnesses so I can be more effective in messing up their credibility.  That's not the standard based on them motion for newly discovered evidence.  And keep in mind the jury had a lot of evidence before it.  This wasn't the only point in front of the jury.

MR. MARTINEZ:  Well, I could be seriously mistaken, Judge.  I thought that the two witnesses who testified, none of them identified my client.

THE COURT:  That's right.  They didn't.

MR. MARTINEZ:  And the only evidence was a pretrial determination nine months ago where he did identify him.  I think that's all they had.

THE COURT:  And I think you're right.  I think in the courtroom neither witness identified your client; but that was before the jury.

MR. MARTINEZ:  Yes.  I agree with that.

THE COURT:  Okay.  And what I heard, the testimony I heard today, if Mr. Cortinas were to testify at a trial again, he would again not identify your client as Pajaro, which he didn't do at the previous trial; but he would now say he is part of the conspiracy.

MR. MARTINEZ:  Well, I would just say one thing.  And once again I'd ask to -- I defer to the government.  I don't

1 think in that report he ever mentioned my client was part of

2 the conspiracy.

3    THE COURT:  He said it today, Mr. Martinez.

4    MR. MARTINEZ:  Today he said it; but in the report --

10:15  5    THE COURT:  So the bottom line is what I'm looking at

6 here is if I give you a new trial and he comes in to testify,

7 you are right.  He may now say "That is Cosco.  That's not

8 Pajaro.  Just like I identified at the last trial, that I

9 didn't identify him as Pajaro, that's the same."  But now "He

10:15 10 was there too."  And guess what?  "Since the trial my wife got

11 threatened."

12    MR. MARTINEZ:  Right.  That's all true.  That's all

13 true.

14    THE COURT:  So the bottom line is are you really

10:15 15 advancing the ball?  Even if I were to give you what you

16 wanted, are you really advancing the ball?

17    MR. MARTINEZ:  Well, I think this would be a hard

18 case to win if the witness got up there and specifically

19 mentioned facts and circumstances that my client did or didn't

10:15 20 do.  I'm not going to say it doesn't; but I will say that I

21 think his credibility would be so shot up that he might just be

22 rejected all together by a jury as well.

23    THE COURT:  Okay.  Well, let me --

24    MR. MARTINEZ:  And I agree it is substantive.

10:16 25    THE COURT:  Let me ask you a question, because I'm

```
 1    trying to remember some of these things.  I'm looking at the

 2    report that you-all introduced as evidence.  On November 5th of

 3    2008, okay, the witness identified somebody else as Pajaro;

 4    right?

10:16 5              MR. MARTINEZ:  Right.

 6              THE COURT:  Not your client; right?

 7              MR. MARTINEZ:  That's right.

 8              THE COURT:  So how is that newly discovered evidence

 9    if you had that before the trial?

10:16 10             MR. MARTINEZ:  It wasn't told to me.

11             THE COURT:  This report wasn't given to you before

12    the trial?

13             MR. MARTINEZ:  That's right.

14             MR. GALDO:  I don't know if Your Honor wants me to

10:16 15    respond now or?

16             MR. MARTINEZ:  It wasn't intentional.  I think they

17    discovered it after the trial.

18             THE COURT:  Let me find out from Mr. Galdo when they

19    gave you that report, Mr. Martinez.

10:16 20             MR. GALDO:  Your Honor, at least one point he was

21    talking about two different things.  All the photo lineups that

22    Mr. Cortinas identified, which did include him identifying

23    another brother as might be Pajaro and he said looks like him,

24    but younger, those reports were made available to defense

10:17 25    counsel by Mr. Gyires.  I know we had two different trial
```

         1     setting dates, if I remember, for this case.

         2              THE COURT:  Uh-huh (yes).

         3              MR. GALDO:  I believe there was a continuance.  And I

         4     know I brought all the boxes with me.  I know he made those --

10:17    5              THE COURT:  Okay.  So that particular --

         6              MR. GALDO:  -- reports available.

         7              THE COURT:  -- photo lineup where Castaneda was

         8     identified as Pajaro was given to the defense prior to trial?

         9              MR. GALDO:  It was one of his brothers, correct.

10:17   10              THE COURT:  Okay.

        11              MR. MARTINEZ:  No.  I thought you meant the report

        12     that --

        13              THE COURT:  No, no.  I'm sorry.  I'm talking about

        14     the substance.

10:17   15              MR. MARTINEZ:  Okay.

        16              THE COURT:  Okay.  So that was known to you prior to

        17     trial?

        18              MR. MARTINEZ:  Right.  But in that report it said it

        19     doesn't look like Pajaro.  In other words, he didn't definitely

10:17   20     say it wasn't Pajaro.

        21              THE COURT:  I understand.  But what I'm saying is --

        22              MR. MARTINEZ:  That wasn't given to me.

        23              THE COURT:  But you had the photo lineup where a

        24     brother was identified as Pajaro.

10:17   25              MR. MARTINEZ:  No.  He said he looks like his

1    brother.

2              THE COURT:  I have the report says Cortinas wrote

3    "Pajaro" next to Eddie Castaneda's photo.  But you had that

4    photo lineup --

10:17 5          MR. MARTINEZ:  Yes.

6              THE COURT:  -- prior to trial?

7              MR. MARTINEZ:  Yes.

8              THE COURT:  So you knew prior to trial that he had

9    identified somebody else as Pajaro.

10:17 10         MR. MARTINEZ:  But the substance of the report says

11   "It looks like his brother."

12             THE COURT:  No.  No, no.  You knew prior to trial

13   that Mr. Cortinas had identified someone else as Pajaro.

14             MR. MARTINEZ:  Yes.

10:18 15         THE COURT:  Okay.  So how can it be newly discovered

16   evidence that now Mr. Cortinas is still saying this man is not

17   Pajaro?

18             MR. MARTINEZ:  Because the new evidence, I think the

19   new evidence would be that he -- I don't think they asked him

10:18 20   in the report exactly what he did and didn't do in relation to

21   being involved in this conspiracy.

22             THE COURT:  Right.  And I know that that's not what

23   you are alleging in your motion as a basis for new evidence.  I

24   know that.  I know you're not alleging.  What you are alleging

10:18 25   is "He, my client was identified as Pajaro at some point in

```
 1    time.  The witness is now saying he's not Pajaro.  He's Cosco."
 2    Right?
 3              MR. MARTINEZ:  Right.
 4              THE COURT:  But you knew prior to trial that the
 5    witness identified another brother as Pajaro.
 6              MR. MARTINEZ:  Yes.
 7              THE COURT:  Okay.  So that is not newly discovered
 8    evidence.  You had that prior to trial, that he had identified
 9    a brother as Pajaro and not this gentleman.
10              MR. MARTINEZ:  Right.  It's just that I feel that the
11    new evidence is more definitive, more competent in terms of him
12    not being Pajaro than the identification evidence that was
13    supplied to me.  I agree with you.
14              THE COURT:  I understand what you are saying.  I
15    think I understand what you are saying, Mr. Martinez, and I
16    just want to make sure that I'm understanding.
17              MR. MARTINEZ:  You're right.  That's right.
18              THE COURT:  Okay.  So you knew prior to trial that
19    there was a problem with the pretrial identification of Pajaro
20    by Cortinas?
21              MR. MARTINEZ:  That's correct.
22              THE COURT:  You are claiming now in a motion for new
23    trial that your client should get a new trial because of the
24    misidentification of your client as Pajaro?
25              MR. MARTINEZ:  That's right.
```

```
 1              THE COURT:  But no one ever identified your client as

 2     Pajaro.

 3              MR. MARTINEZ:  That's right.

 4              THE COURT:  So where is the problem?

 5              MR. MARTINEZ:  That I think by the testimony given

 6     today that he wasn't Pajaro, it is a definitive statement,

 7     something that he didn't tell the police or the law enforcement

 8     or U.S. Attorneys before the trial.

 9              THE COURT:  But he did, Mr. Martinez.  He did it

10     definitely in the photo lineup when he wrote "Pajaro" by the

11     brother's picture.  That is a definitive identification of

12     somebody else as Pajaro.

13              MR. MARTINEZ:  Well, I didn't -- I thought -- I mean

14     I see where you are getting the interpretation from.  The

15     report does say that and I did have it.  I'm just saying to me

16     the report was that he wasn't sure.  I don't think it was --

17              THE COURT:  Okay.

18              MR. MARTINEZ:  -- that concrete, that competent.

19              THE COURT:  You're right.

20              MR. MARTINEZ:  But I see how your interpretation --

21              THE COURT:  No, no.  You're right.  In the report it

22     says he thought it was Pajaro.  It was a younger-looking

23     Pajaro.  He wasn't sure who was Pajaro; but then he ultimately

24     wrote "Pajaro" by Eddie Castaneda's name.

25              MR. MARTINEZ:  That's right.  Well, if you interpret
```

1    that as that's where your interpretation comes from, that was a

2    fact.  You know, I can't deny that.  That was touched on.

3           THE COURT:  Okay.  So I guess my question and what is

4    going to be -- what I'm going to be filtering through as I go

10:21  5    through all of the matters before I issue my order is it is not

6    newly discovered evidence, that this man identified somebody

7    else as Pajaro.  When I say "this man" I mean Cortinas.  Not

8    your client.

9           The only thing that is new now, the only thing that is new

10:21 10    now is that he gave your client a nickname of Cosco, which was

11    not given before.

12           MR. MARTINEZ:  But it would be -- look.  I may not

13    want to put this guy on.  That's why I didn't ask him any

14    questions.  I also didn't ask any cross examination too.

10:21 15           THE COURT:  But that's a trial strategy, probably a

16    very smart trial strategy, given what he now is saying, that

17    "Yes, this man was there too," a very effective trial strategy.

18    Because otherwise the jury would have had a definitive

19    statement that this man was part of the conspiracy.  So that, I

10:22 20    think it was a very smart trial strategy on your part, Mr.

21    Martinez.

22           MR. MARTINEZ:  What it would have done is -- you

23    know, I agree on that part of the information; but I think that

24    as a lawyer, I mean, I agree.  He just could have blurted it

10:22 25    out during my cross examination, and maybe it's best that I

1    didn't do a cross in the long.  But had I known for sure, and

2    I'm not playing mental gymnastics here.

3              THE COURT:  Uh-huh (yes).

4              MR. MARTINEZ:  But even with this report, I probably

10:22  5    I may still not have cross examined him on the issue; but I

6    would have been more confident to cross examine him knowing

7    that he couldn't blurt out "It looks like Pajaro.  By the way,

8    it is Pajaro."

9              THE COURT:  But you did know, Mr. Martinez.  You had

10:22 10    that photo ID that you could have crossed him on and say

11    "Didn't you identify his brother on the photo ID as Pajaro?"

12    You did have that.

13             MR. MARTINEZ:  There are reasons for that, yes.

14             THE COURT:  You had that.

10:22 15             MR. MARTINEZ:  I had that.

16             THE COURT:  Okay.  Granted, you didn't have the

17    report that explained the photo lineup; but you had the photo

18    lineup itself.

19             MR. MARTINEZ:  That's right.

10:23 20             THE COURT:  Okay.

21             MR. MARTINEZ:  I did.

22             THE COURT:  Here is another question that I have:

23    Which is -- okay.  If Mr. Roel, Mr. Castaneda is Cosco and

24    Eddie is Pajaro, who is the supposed third brother?

10:23 25             MR. MARTINEZ:  I don't know, Judge.

1          THE COURT:  Pollo was Jose.  I'm getting a little

2     mixed up in terms of the brothers as well.

3          MR. MARTINEZ:  I only knew of two brothers, talking

4     to his wife.

10:23 5          THE COURT:  Okay.

6          MR. MARTINEZ:  He's not in contact with the others.

7     And I'm not saying they existed or didn't exist.  I knew of

8     two.

9          THE COURT:  You knew of only your client and one

10:24 10     brother.

11          MR. MARTINEZ:  I'm not going to come in and say that

12     I would have still cross examined him or not.  I don't know

13     what I would have done.  But that would be it.  I didn't think

14     it was that clear in pretrial, and it is more clear now and

10:24 15     touches upon the indictment in a more crystal clear way.

16          THE COURT:  But the indictment is not evidence.

17          MR. MARTINEZ:  Right.

18          THE COURT:  Okay.  Mr. Galdo, argument.

19          MR. GALDO:  Your Honor, I think the government

10:24 20     actually joins in your confusion over the brother issue, in

21     that everything the government has done, if you look at the

22     report, indicates that there are just I guess a total of three

23     brothers, two brothers of Mr. Luis Roel Castaneda, himself,

24     Jose and Eddie.  And this third brother, Cosco that Mr.

10:24 25     Cortinas talks about, he's the only person who has ever

1    mentioned this third brother.

2         In fact, that's why we, the government did not believe his

3    testimony on the stand.  We do believe that the person in court

4    today is Pajaro.  I just want to make clear, where we do not

10:25 5    believe Mr. Cortinas's testimony that that is not Pajaro.

6         If you look at the report, he goes through his own mental

7    gymnastics to explain why this man took a DMV photo for his

8    brother.  It gets rather muddled.

9         But what is crystal clear is that the six-pack photo

10:25 10   identification that he did he wrote "Pajaro" by it.  It was

11   Luis Roel Castaneda's driver's license photo, the same birth

12   date that matched his photograph in his booking photo, and

13   that's the person in court today, Your Honor.  And that's why

14   the government stands by, well, one of the reasons the

10:25 15   government stands by its conviction.  And just to clarify, --

16              THE COURT:  Okay.  So let me.  Back up, Mr. Galdo.

17   The picture that Mr. Cortinas identified as the man involved in

18   the conspiracy with him, regardless of what nickname was given

19   to him, was this man (indicating)?

10:26 20              MR. GALDO:  Yes, Your Honor.

21              THE COURT:  Okay.  So the identification on the

22   lineup was correct in terms of this particular person?  Whether

23   he is called Pajaro, Cosco or somebody else, he identified this

24   person (indicating)?

10:26 25              MR. GALDO:  The birth date matches the driver's

1    license photo, his previous drug conviction as well as his U.S.

2    Marshals booking photo, and all that went to the jury.  All the

3    pieces of evidence went to the jury.

4              THE COURT:  Okay.  But no one is saying that that

10:26  5    photo lineup, Mr. Cortinas misidentified the person in the --

6    what I'm understanding is the person identified by Mr. Cortinas

7    in the lineup is this man (indicating).  Not a brother.

8              MR. GALDO:  That's the government's position.

9              THE COURT:  But is that -- and you are saying because

10:26  10   that picture matches all of this defendant's identifiers.

11             MR. GALDO:  And Mr. Cortinas even told us in the

12   interview, if you look at the DEA report, that he still

13   believed the person he identified in the photo was in fact

14   Pajaro.  What he did say, and defense counsel is correct

10:26  15   reading the transcript, "Do you see Pajaro in the courtroom

16   today?"  "No."  "Can you stand up and look?"  Answer:  "He's

17   not here."  And the jury heard that.

18             THE COURT:  Right.  My remembrance is he never could

19   identify the defendant as Pajaro.

10:27  20             MR. GALDO:  In court.  Correct, Your Honor.

21             THE COURT:  Right.

22             MR. GALDO:  And the government's position is that

23   there was no -- the only in-court identification of the

24   defendant just, looking through the transcript, was by the

10:27  25   analyst who put together the photo lineup.  There was one

1    in-court identification by analyst Gamez who basically said "I

2    put together this photo lineup.  That photo is Pajaro and

3    Pajaro is right there in the courtroom."  But defense counsel

4    is correct, that the two witnesses, the cooperators did not

10:27  5    identify.

6              THE COURT:  Let's leave nicknames off, because I

7    don't care what they call themselves in terms of their

8    nicknames.  I know that this man's name is Luis Roel Castaneda

9    (indicating).

10:27  10              MR. GALDO:  Yes.

11              THE COURT:  So let's talk about him in terms of his

12    name, Luis.  The picture identified by Mr. Cortinas as a man

13    involved in a conspiracy with him, as this man, is Luis

14    Castaneda?

10:27  15              MR. GALDO:  Yes, Your Honor.

16              THE COURT:  Whether you call him Pajaro, Cosco, Pollo

17    or whatever?

18              MR. GALDO:  Yes, Your Honor.

19              THE COURT:  Okay.

10:27  20              MR. GALDO:  And that's why the first the prong I

21    guess of the three parts that I mentioned in the opening, my

22    opening, while we don't believe he is accurate, credibility or

23    accuracy or whatever when he says that "the person I identified

24    in the photo lineup is not in the courtroom today," he is in

10:28  25    fact factually inaccurate.  That person is in the courtroom

1    today.  He identified a photograph, a younger photograph of

2    Luis Roe Castaneda; but that is the same man who is here today.

3        And secondly, I guess points two and three have kind of

4    been combined a little bit, that this really isn't new

10:28  5    evidence.  The jury heard that the witnesses could not identify

6    Mr. Castaneda as being involved in the conspiracy in court.

7    They heard that and defense, if you look at his closing, he

8    mentions that over and over again, that you can't trust an

9    out-of-court identification as much as you can trust an

10:28 10    in-court identification.  That was brought up repeatedly and

11    that all that went to the jury.

12        And lastly, I think the point Your Honor was touching on

13    somewhat is this new evidence supposedly that this man today is

14    Cosco, who was part of the conspiracy, whether that would

10:28 15    probably result in a new conviction, I don't think there is any

16    way that meets that standard.

17            THE COURT:  Rebuttal, Mr. Martinez.

18            MR. MARTINEZ:  I can't say that the government's

19    statement is incorrect; but I would say this:  That

10:29 20    identification that occurred in that photo ID was a license

21    that purported to be my client's identifying information.  A

22    photo was there; but it was a 1997 license.

23        They didn't do a photo array where they, you know, put

24    different people.  You know, like it is not like a formalized

10:29 25    photo identification.  It was a license.  And they may have --

1          THE COURT:  Where do photo array pictures come from,

2     Mr. Martinez?  They all come from licenses.

3          MR. MARTINEZ:  No.  But his picture where they

4     identified him actually as being, you know, him, the person,

10:29  5     that photo was a '97 license.

6          THE COURT:  And that may be.  Okay.  So we know that

7     it was an old picture; but the witness -- it is a picture of

8     your client.

9          MR. MARTINEZ:  Yes.

10:29 10          THE COURT:  And the witness identified that person as

11     being involved in the conspiracy with him.  Yes?

12          MR. MARTINEZ:  Not at the trial.

13          THE COURT:  Outside of trial.

14          MR. MARTINEZ:  Yes.

10:30 15          THE COURT:  Okay.  So I guess what I'm trying to

16     establish here, I want to make it clear for my mind, Mr.

17     Martinez, is that he didn't identify a picture of a brother as

18     this man.  It really was this man.  He identified this man;

19     right?

10:30 20          MR. MARTINEZ:  That's right, at the pretrial.

21          THE COURT:  Right.  Right.  Right.  That's what I

22     meant.  I mean on the photo lineup at pretrial.

23          MR. MARTINEZ:  Right.  From the '97 card that

24     purported to be my client, he identified him.

10:30 25          THE COURT:  Okay.  Good.  So that's clear in my mind.

1    So really what we are talking here is whether or not the

2    witness called him "Pajaro" or "Cosco."  That's really the only

3    issue here, what is his nickname.  His name is not an issue.

4    His involvement in the conspiracy is not an issue.  There's not

10:30  5    a problem with the pretrial line-up per se, in that he

6    identified the person in the photo as the one being involved in

7    his conspiracy and it is this particular man.  The only issue

8    that we are arguing over is whether or not the indictment is

9    wrong in calling your client Pajaro.

10:31  10         MR. MARTINEZ:  Or attributing the acts that Pajaro

11   committed to my client.

12         THE COURT:  Well, from what you-all are telling me,

13   no one is denying that it was this person.  And I'm not asking

14   you to concede any of the facts, Mr. Martinez.  That's not the

10:31  15   point here.  Okay.  I'm just kind of trying to get the evidence

16   in my brain.  From the evidence no one is saying that the

17   witnesses ever said that a person other than this man was

18   involved in the conspiracy.  It is just whether his name was

19   known as Pajaro or Cosco.

10:31  20         MR. MARTINEZ:  I don't know.  I know he just said my

21   client was involved in the conspiracy; but he could have said

22   pretrial that Pajaro and my client were involved.  In other

23   words, if there was a Pajaro and if he identified his brother

24   as being Pajaro, it could be that both of them were involved.

10:31  25         THE COURT:  Okay.  But the issue here is not what he

said pretrial.  The issue is what he said at trial and whether

there is newly discovered evidence since then.  At trial the

only thing he said that implicated your client, so to speak,

was that pretrial lineup, that "The man in this picture was the

man I identified in the conspiracy."

MR. MARTINEZ:  Yes.

THE COURT:  The man in that picture is your client.

Whether he is called Pajaro, Cosco or whatever, it is your

client; right?

MR. MARTINEZ:  Right.

THE COURT:  Okay.  So it doesn't matter what else he

said pretrial, because if it didn't get in front of the jury,

it wouldn't have affected the jury.

MR. MARTINEZ:  Right.

THE COURT:  Okay.  So the issue here is whether or

not there is a problem with what name your client was called.

And you knew prior to trial that Mr. Cortinas had identified

another man as Pajaro.

MR. MARTINEZ:  I knew that he was confused.

THE COURT:  Okay.  So you knew.  But you knew from

the photo lineup of Eddie Castaneda that he was identified as

Pajaro.

MR. MARTINEZ:  At some point, yes.  But there was a

lot of confusion.

THE COURT:  Sure.  Sure, there was.  Granted.  And I

|        |    |                                                                      |
|--------|----|----------------------------------------------------------------------|
|        | 1  | don't necessarily disagree with that; but the bottom line is         |
|        | 2  | you knew there was a problem with the identification.                |
|        | 3  | MR. MARTINEZ:  Yes.                                                   |
|        | 4  | THE COURT:  And it was prior to trial.                               |
| 10:33  | 5  | MR. MARTINEZ:  Yes.                                                   |
|        | 6  | THE COURT:  So it is not newly discovered evidence.                  |
|        | 7  | That's the point here, because that's the standard that I have       |
|        | 8  | got to look at.  The only thing that is new is that the man now      |
|        | 9  | can identify by nickname who your client is as opposed to            |
| 10:33  | 10 | anything else.  So all we did with the newly discovered              |
|        | 11 | evidence is we established your client's nickname.  That's           |
|        | 12 | really it.  So the issue here is whether your client's correct       |
|        | 13 | nickname would have substantially affected the outcome of the        |
|        | 14 | trial.                                                               |
| 10:33  | 15 | MR. MARTINEZ:  But I could be wrong here, but I know                  |
|        | 16 | in the trial he never said my client was involved in the             |
|        | 17 | conspiracy.  He was never asked that; but he never did say           |
|        | 18 | that.  The direct I don't think established he was involved in       |
|        | 19 | the conspiracy.  I don't think anybody asked him that.               |
| 10:33  | 20 | MR. GALDO:  Your Honor, may I respond?                                |
|        | 21 | THE COURT:  Uh-huh (yes).                                            |
|        | 22 | MR. GALDO:  I think the issue is we did ask him                      |
|        | 23 | about, he talked a lot about this person he knew as Pajaro and       |
|        | 24 | he explained the involvement of that person who he knew as           |
| 10:34  | 25 | Pajaro being involved in the conspiracy.  And then he said that      |

1    photograph, which we believe is substantive evidence, was

2    Pajaro and that person was involved in the conspiracy; and if

3    that person is in fact your client, then there is substantive

4    evidence of his involvement.

10:34  5            THE COURT:  Okay.  So the only issue here though,

6    really the only issue here is was your client Pajaro or Cosco?

7    And if the witness now says "Oh, he's not Pajaro.  He's Cosco,"

8    that would go to the witness' credibility.

9            MR. MARTINEZ:  Well, he could be doing -- you know,

10:34 10   he could be thinking in all the debriefing "Pajaro, his

11   brother, my client's brother did this, this, this, this, this."

12   Okay.  Now at trial he's saying it is not him.

13            THE COURT:  No.  At trial he didn't say it wasn't

14   him.  At trial he just said he didn't see Pajaro in the

10:34 15   courtroom.

16            MR. MARTINEZ:  Okay.  But the problem with that is

17   that if the government relies on the photograph, he identifies

18   the photograph as my client.

19            THE COURT:  What nickname did he write by that

10:35 20   photograph, or --

21            MR. MARTINEZ:  Pajaro.

22            THE COURT:  -- what name did he put by the phot?

23            MR. MARTINEZ:  Pajaro.

24            MR. GALDO:  Pajaro, Your honor.

10:35 25            THE COURT:  Okay.  So we have two photo lineups with

1    Pajaro's name on it.

2             MR. MARTINEZ:  Right.  And he's not Pajaro under the

3    new evidence.

4             THE COURT:  But that's the point though.  The issue

10:35  5    is not whether he committed the -- whether he was engaged in

6    the conduct with the witness.  It is what the witness knew him

7    as, either Pajaro or Cosco.

8             MR. MARTINEZ:  But the witness could be saying this

9    is Pajaro and attributing what Pajaro did to my client.   In

10:35 10    other words, he thinks my client is Pajaro and everything in

11    his involvement.  I'm not saying today.  I'm not saying today.

12             THE COURT:  Yes.  We'll move that to the side today.

13             MR. MARTINEZ:  In the pretrial he could be signing

14    that statement Pajaro, but basically indicating that Pajaro

10:35 15    committed all these acts and my client is Pajaro, he committed

16    all the acts.  Well, now it turns out he is not Pajaro.

17             THE COURT:  Okay.  But that's the point though, Mr.

18    Martinez.  If he at trial said Pajaro committed all of these

19    acts, "can you see Pajaro in the courtroom?"  "Pajaro is not in

10:36 20    the courtroom."

21             MR. MARTINEZ:  Right.

22             THE COURT:  He just basically said "This man isn't

23    the one that committed all of these acts that I identified."

24             MR. MARTINEZ:  Right.

10:36 25             THE COURT:  Okay.  The jury had that.

                    MR. MARTINEZ:  That's true.

                    THE COURT:  So why is it newly discovered evidence
         that his nickname may be Cosco and not Pajaro?  The witness
         actually by calling him Pajaro and not identifying him in the
10:36    courtroom failed to connect your client to the conspiracy,
         which was powerful evidence for the defense, which frankly you
         were absolutely right not to touch him in terms of cross
         examination because he had just basically said "The guy that
         did everything with me is Pajaro, and he's not in the
10:36    courtroom."  So, you know, frankly, he helped the defense a lot
         at that trial with that particular situation.  So I'm not real
         sure why you would want to overturn all that, because he now
         says his nickname is Cosco, not Pajaro.

                    MR. MARTINEZ:  I know what you're getting at.  I mean
10:36    it is just, I guess going through the mental gymnastics, it
         might be better for me just to appeal it on sufficiency
         grounds.

                    THE COURT:  Exactly.  Exactly.  Because the bottom
         line is if I give you a new trial, the witness will come in and
10:37    say "Yes, that is Cosco.  And, yes, he did it with me and he
         was there" and the whole nine yards.

                    MR. MARTINEZ:  Right.

                    THE COURT:  Where at trial he said "I did all of
         these things with Pajaro and Pajaro is not in the courtroom."

10:37               MR. MARTINEZ:  That's true.  That's the risk he's

1    taking.

2           THE COURT:  But that's a very powerful -- that was

3    very powerful evidence for the defense, don't you think?

4           MR. MARTINEZ:  Oh, yes.  That is the risk he's taking

10:37 5    if you grant the motion.  Absolutely.

6           THE COURT:  So my bottom line is how would this newly

7    discovered evidence help you if the old evidence really never

8    tied your client to the acts of Pajaro through Cortinas?

9           MR. MARTINEZ:  Maybe.  I don't know.  Maybe the

10:37 10   government would re-do the indictment or whatever.

11          THE COURT:  Let's say they re-do the indictment.  The

12   only thing that changes is the nickname from Pajaro to Cosco.

13   So?

14          MR. MARTINEZ:  I'm presuming that if he says "He was

10:38 15   involved with me in the conspiracy," he's going to detail

16   specific acts.  True or not true, he's going to say that.  So,

17   you know, I see your point.  I'm just going to say that maybe

18   the government wouldn't want to use him as a witness after --

19          THE COURT:  But you want him.

10:38 20          MR. MARTINEZ:  -- seeing this guy.

21          THE COURT:  But based on the testimony that he gave

22   at trial, that he said "I committed all of these acts in the

23   conspiracy with Pajaro.  Pajaro is not in the courtroom," you

24   would have wanted him as a witness at that point.  And maybe

10:38 25   not the government.  But you did.  You would want him.

```
 1              MR. MARTINEZ:  Right.  I didn't care.  That's right.
 2     We're defense lawyers.  I mean, we don't have the moral
 3     integrity they do.
 4              THE COURT:  You should.
 5              MR. MARTINEZ:  I'm trying to strive for that.
 6              THE COURT:  You should.
 7              (LAUGHTER.)
 8              THE COURT:  But I'm just saying, I mean, in a way he
 9     was exonerating your client in the courtroom in front of the
10     jury.  So I'm not -- and like I said, that may -- your strategy
11     of not trying to bang him up in cross examination absolutely is
12     pretty brilliant, because today he told you something that he
13     didn't tell you at the trial because you didn't rock that boat,
14     and that was pretty brilliant strategy at the time of the
15     trial.  So all the jury knew is that Cortinas, the
16     co-conspirator could not identify your client as being involved
17     in the conspiracy; right?
18              MR. MARTINEZ:  Well, and I would have been creamed if
19     I had done it.
20              THE COURT:  Exactly.  And now we know that you would
21     have if you had tried to rock the boat in cross examination.
22     But the bottom line is he essentially exonerated your client,
23     whether he was indicted under Pajaro or Cosco.  I instruct the
24     jury that the indictment is not evidence.
25              MR. MARTINEZ:  Right.
```

1          THE COURT:  So what difference does it make if the

2     indictment gets changed?

3          MR. MARTINEZ:  Well, I thought about that too in

4     terms of do I want to really do this or not in terms of the

10:39  5     strategy of this going up on appeal.

6          THE COURT:  You may be better with that, because

7     right now the only evidence that the Circuit will have,

8     substantive evidence, is that that man said Pajaro did all of

9     those things and he wasn't in the courtroom.

10:40 10          MR. MARTINEZ:  Right.  That's it.

11          THE COURT:  And that's what I'm saying, is frankly,

12     I'm not real sure that a new trial is the best strategy for

13     your client.

14          MR. MARTINEZ:  Well, I thought of that.  I sure have.

10:40 15     Especially today.  I didn't even know about that until today,

16     and then he blurts this out.  You know, I filed this motion not

17     knowing he was going to say that; but I don't think it was that

18     clear in the report subsequent to the trial that he was going

19     to say that.

10:40 20          THE COURT:  I'm just saying prior to the trial it was

21     clear that he was confused in terms of who Pajaro was since he

22     had identified two people as Pajaro.  That was known prior to

23     trial, so I don't know that it's newly discovered evidence.

24          MR. MARTINEZ:  Judge, you know, I'll let make a

10:40 25     decision.

```
 1              THE COURT:  Okay.  I will rule definitively.  I'll
 2     issue a written ruling, Mr. Martinez.
 3              MR. MARTINEZ:  Well, Judge, I guess we have got to
 4     wait for your ruling before we file the notice of appeal, if in
10:40 5    fact you overrule us.
 6              THE COURT:  Well, and here is my suggestion though.
 7     My suggestion is go ahead and start perfecting your appeal to
 8     be on the safe side, because I know that in the federal courts
 9     you don't have to file a motion for new trial to preserve
10:41 10   appeal.  So the time for filing a notice of appeal starts to
11     run when the judgment is entered.
12              MR. MARTINEZ:  No.  But you told me --
13              THE COURT:  Yes.  So I haven't done the judgment.  So
14     what I'm saying is if I do the judgment within the next few
10:41 15   days, your time clock for that will start running regardless of
16     when my ruling for the motion for new trial will be.
17              MR. MARTINEZ:  Okay.
18              THE COURT:  So just what I'm saying is be prepared.
19     When that judgment comes out go ahead and start perfecting your
10:41 20   appeal regardless of where we are with the other Order.
21              MR. MARTINEZ:  Okay.
22              THE COURT:  Okay.
23              MR. MARTINEZ:  So you could send me an email on that.
24              THE COURT:  Well, you will get a copy of the
10:41 25   judgment.
```

1     MR. MARTINEZ:  Okay.  And I've got 10 days from that

2  point.

3          THE COURT:  I think it either 10 or 14 days that you

4  have to perfect the appeal.

10:41  5          MR. GALDO:  Judge, just very briefly.

6          THE COURT:  Yes.

7          MR. GALDO:  I just want to clarify one thing.  Mr.

8  Gyires filed his motion response under seal because of the

9  inclusion of the information from the Presentence Report.

10:41 10          THE COURT:  So it is under seal.

11          MR. GALDO:  It is under seal.

12          THE COURT:  Okay.  What I'm saying is I might end up

13  issuing the judgment sooner than the Order for the motion for

14  new trial.  So, Mr. Martinez, I don't want you to wait for my

10:42 15  Order and then you are outside of the time limits for the

16  appeal.

17          MR. MARTINEZ:  Okay.  So you will be issuing that in

18  the next couple of days.

19          THE COURT:  Uh-huh (yes).

10:42 20          MR. MARTINEZ:  Judge, I'm not going obviously abandon

21  my client at this point.

22          THE COURT:  Sure.

23          MR. MARTINEZ:  But the family is kind of short on

24  funds.  Would the Court consider?  I'll stay on the case not

10:42 25  charge the government.  But would the Court consider paying for

1    the record and the appeal fee.

2         THE COURT:  I would have to appoint you as counsel on

3    appeal.

4         MR. MARTINEZ:  And I can tell you I won't submit a

10:42 5    voucher on it.

6         THE COURT:  I mean, if I appoint you on appeal.  File

7    a motion that he needs counsel appointed for appeal.

8         MR. MARTINEZ:  Okay.

9         THE COURT:  And then when I rule on that then I can

10:42 10   go ahead at that point.  If I grant it, at that point then I do

11   end up paying for the transcript.

12        MR. MARTINEZ:  Okay.  And I won't submit a voucher

13   and we will do that, Judge.

14        THE COURT:  Just go ahead.  Yes, go ahead and file

10:42 15   your motion.

16        MR. GALDO:  We already have a transcript, Your Honor.

17        THE COURT:  So the complete transcript of the trial?

18        MR. GALDO:  Yes, Your Honor.

19        THE COURT:  So we'd only have to pay the copy fee, so

10:43 20   that's not a significant amount.

21        MR. MARTINEZ:  And I think there is a $455 appeal

22   fee.  I think they charge $450 or $500, believe it or not.

23        THE COURT:  If I appoint you though, then yes, if

24   your client is considered indigent, then I'm sure that that

10:43 25   doesn't go anywhere.

1          MR. MARTINEZ:  Thank you, Your Honor.

2          THE COURT:  All right.  Well, I will issue a ruling

3     though, just so that you-all will know.

4          MR. MARTINEZ:  Thank you, Your Honor.

10:43  5          MR. GALDO:  May I be excused, Your Honor?

6          THE COURT:  You may.

7

8

9                              oOo

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1          UNITED STATES DISTRICT COURT        )

 2          WESTERN DISTRICT OF TEXAS           )

 3

 4               I, ANNA RENKEN LAFRENZ, Official Court Reporter

 5     for the United States District Court, Western District of

 6     Texas, do hereby certify that the foregoing is a correct

 7     transcript from the record of proceedings in the above matter.

 8

 9               Certified to by me this 14th day of July, 2012.

10

11

12

13                         /s/ Anna Renken Lafrenz, CSR, RPR

14                         ANNA RENKEN LAFRENZ, CSR, RPR
                           United States District Court
15                         Western District of Texas
                           111 E. Broadway
16                         Suite 214
                           Del Rio, Texas  78840
17
                           CSR #2343
18                         Expires 12/31/12

19

20

21

22

23
           #6703AR
24

25