UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | Cause No. DR-10-CR-00361(2)-AM |
| | § | |
| LUIS ROEL CASTANEDA, a/k/a | § | |
| "Pajaro" | § | |

## ORDER

Pending before the Court is Defendant Luis Roel Castaneda's Motion for a New Trial ("Motion"). (ECF No. 124.)  For the following reasons, this Motion is **DENIED**.

## I.  BACKGROUND

On March 16, 2011, a jury found Luis Roel Castaneda (Defendant) guilty of one count of conspiracy to import cocaine into the United States and one count of conspiracy to possess cocaine with intent to distribute.  (ECF No. 111.)  In the present Motion, the Defendant has moved for a new trial based on newly discovered evidence.  (ECF No. 124.)

The relevant facts regarding the Defendant's trial are as follows.  On February 24, 2008, police discovered 140 kilograms of cocaine in a vehicle driven by Aurelio Cortinas (Cortinas) on Highway 90 near Del Rio, Texas.  (ECF No. 125 at 2.)  At the Defendant's trial on March 15, 2011, Cortinas testified that Cortinas was employed by an organization to transport cocaine from Del Rio, Texas to Houston, Texas, and that the individual to whom he delivered the cocaine was named "Pajaro."  (ECF No. 135 at 241-42.)  On November 5, 2008, Cortinas identified a 1997 photograph of the Defendant as Pajaro in a photo line-up.  (ECF No. 125, Ex. 1 at 1.)  Cortinas was also shown a photo line-up that included the Defendant's two brothers, Eddie and Jose Castaneda. (*Id.* at 2.)

Before identifying the Defendant as Pajaro, Cortinas stated to agents that Eddie Castaneda looked like a younger version of Pajaro and wrote "Pajaro" next to Eddie Castaneda's photo. (*Id.*) On February 2, 2008, Cortinas told federal agents that Pajaro has a "snaggletooth," and a photograph taken of the Defendant reveals that the Defendant has this unique dental feature. (*Id.* at 4.) On May 14, 2009, Cortinas stated to federal agents that his girlfriend had recently been threatened at her home in Mexico and, on March 15, 2011, Cortinas stated to federal agents that his girlfriend's former residence had recently been broken into and ransacked. (*Id.* at 2.)

On direct examination at the Defendant's trial, when the Government asked Cortinas whether he saw Pajaro in the courtroom, Cortinas responded that he did not. (ECF No. 135 at 250.) The Defendant had changed in appearance between the time the photo used in the photo line-up was taken and the time of his trial; in the photo he appeared thinner and with a full head of hair, while at trial he appeared heavier and had a shaved head. Upon observing this behavior, the Government asked Cortinas if he was "scared," to which Cortinas replied in the affirmative, stating that he was afraid of retaliation from the drug organization in Mexico. (*Id.* at 261.) The Defendant chose not to cross-examine Cortinas regarding this testimony.

The next witness to testify was Eduardo Barrientos, who also admitted to being a driver in the drug transportation organization. Like Cortinas, Barrientos had previously positively identified the Defendant as Pajaro in a photo line-up, but, on direct examination, Barrientos also stated that he did not see Pajaro in the courtroom. (ECF No. 136 at 292.) The Defendant again chose not to cross-examine the witness.

In addition to the testimony of these witnesses, the Government produced phone records connecting Pajaro with Cortinas on dates relevant to the case, photographs of the vehicle used to

2

transport drugs, photographs of a drug warehouse, photographs of boats used to transport drugs, and a judgment and conviction from the Defendant's prior federal drug trafficking offense.[1] (ECF No. 125 at 3-4.) The Government also presented the driver's license photo used in the photo line-ups with the Defendant's name on it and the Defendant's most recent U.S. Marshal booking photo. (*Id.* at 4.)

The Defendant bases his Motion on the following information. After trial, the Government informed the Defendant that Cortinas had initiated a post-trial meeting with the Government during which Cortinas stated that the person in the courtroom, the Defendant, was not Pajaro, but was instead "Casco," the older brother of Pajaro. (*Id.* at 3.) In order to ascertain the credibility of Cortinas's post-trial statement, the Government inspected immigration databases, contacted the former prison in which the Defendant had been housed, and referred to the Defendant's own statement to probation officers. (ECF No. 125 at 6-7.) After completing this research, the Government concluded that the Defendant only has two brothers, Jose and Eddie. (*Id.* at 7.) Upon being confronted with this information, Cortinas stated that he knows Jose, Eddie, and Pajaro, and that Casco is none of those brothers but is, instead, a fourth brother. (*Id.* Ex. 1, at 3.) To explain the discrepancy between his earlier identification of the Defendant as Pajaro and his current statement, Cortinas stated that his original identification of the Defendant as Pajaro is still correct, and surmised that the "real" Pajaro could have used the Defendant's name and identifiers to obtain a fake identification card. (*Id.*)

On January 31, 2011, this Court held a hearing on the matter. At the hearing, Cortinas re-iterated his testimony that the Defendant is Casco, and additionally testified that Casco was present

---

[1] The Defendant's prior conviction was admitted under 404(b) of the Federal Rules of Evidence.

with the other members of the Castaneda family when the drug conspiracy was taking place.  The Defendant argued that Cortinas's later identification of the Defendant as Casco is newly discovered evidence that, were this Court to grant a new trial, would cause the Government to choose not to call Cortinas as a witness and, presumably, would cause the Defendant to be acquitted.  In his Motion, the Defendant argued that "the lack of in court identification, Cortinas's newly discovered evidence, the pretrial photo of the Defendant consisting of a 1997 photo of the Defendant and the photo array conducted nine months before trial" tend to exonerate the Defendant.  (ECF No. 124 2.)  The Government has argued that Cortinas's later testimony is not credible, is merely impeaching and cumulative, and is not likely to produce an acquittal if introduced at a new trial.  (ECF No. 125 at 8.)

## II. DISCUSSION

"[T]he court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Courts "should not grant a motion for a new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004).  "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *Id.*  A "trial judge may weigh the evidence and may assess the credibility of the witnesses" when considering whether to grant such a motion. *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997).

Motions for a new trial based on newly discovered evidence are "disfavored and reviewed with great caution." *United States v. Erwin*, 277 F.3d 727, 731 (5th Cir. 2001).  A defendant must meet five elements to justify a new trial on the grounds of newly discovered evidence. *Wall*, 389 F.3d at 467.  Defendants must show:

4

(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

*Id.* A defendant must prove all of the above elements in order to receive a new trial based on newly discovered evidence. *Id.*

The Defendant's argument fails under several of these elements. As an initial matter, this Court finds that Cortinas's later identification of the Defendant as Casco does not constitute newly discovered evidence. The jury heard Cortinas testify that he did not see Pajaro in the courtroom. Therefore, the only "new" information that arose after trial is Cortinas's association of the Defendant with the nickname "Casco," and the Court finds this information to be irrelevant. At a new trial, the Defendant could use Cortinas's later statements to impeach Cortinas, however, evidence that is merely impeaching does not warrant a new trial under the above listed elements. Also, the Defendant already had access to similarly impeaching evidence, namely, that Cortinas initially wrote the name "Pajaro" beside Eddie Castaneda's photograph before identifying Luis Castaneda as Pajaro, which evidence the Defendant could have used to impeach the validity of Cortinas's identification of the Defendant as Pajaro. Inasmuch, this Court finds that this evidence is not newly discovered, is cumulative, and is merely impeaching.

Further, after observing Cortinas's behavior at trial and during post-trial hearing, this Court concludes that Cortinas's new statements regarding the Defendant's identity are not credible and, if presented at a new trial, could quickly be undermined by the Government. Cortinas stated in court that he was afraid, admitted to being threatened due to his involvement in the drug trade, and stated that his girlfriend's home was ransacked shortly before trial. Therefore, Cortinas had ample motive

to mislead the Government to protect himself and his girlfriend.  Cortinas's reference to a third brother in the Defendant's family was not corroborated by an examination of relevant records or the Defendant's own statements to a probation officer, and the Defendant has not introduced any new evidence suggesting that such a brother exists.  Cortinas's explanation that Pajaro could have used the Defendant's information to obtain a fake I.D. card seems highly improbable.  Cortinas had previously stated that Pajaro has a unique dental feature also apparent in a picture of the Defendant, which corroborates Cortinas's earlier identification of the Defendant as Pajaro.  Further, the Defendant had changed drastically in appearance from the time the photo used in the photo array was taken to the time of trial, which change may have confused the witnesses.  Also notable is that Cortinas's new testimony does not tend to exonerate the Defendant but, rather, ascribes involvement in the conspiracy to him.

All of the above suggests that Cortinas's new statements given after trial are not credible and would not result in the Defendant's acquittal if presented at a new trial.  Cortinas's post-trial statement, which is not truly newly discovered evidence, and which is merely impeaching, cumulative, and not credible, is not likely to produce an acquittal if introduced at a new trial, and this Court finds this evidence to be wholly insufficient to meet the high legal scrutiny that this Court must apply to motions for a new trial.

### III. CONCLUSION

For the foregoing reasons, the Defendant's Motion is hereby **DENIED**.

SIGNED this 7th day of March, 2013.

_____

ALIA MOSES
UNITED STATES DISTRICT JUDGE